UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JULIET HORTON, | ) |
| | ) |
|     Movant | ) |
| | ) 2:11-cr-00070-GZS |
| v. | ) 2:12-cv-00147-GZS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Respondent | ) |

**RECOMMENDED DECISION ON § 2255 MOTIONS
ALL GROUNDS (ECF No. 30) and
GROUNDS THREE and FOUR (ECF No. 33) and
ORDER APPOINTING COUNSEL FOR
GROUNDS ONE and TWO (ECF No. 33)**

Juliet Horton, a legal permanent resident of the United States convicted of using a counterfeit access device, has filed two motions pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. It appears to me that Horton's principal argument is that she received ineffective assistance of counsel because she did not know that she likely would be deported as a result of pleading guilty to the charge. Having reviewed the record, I now recommend that the Court deny Horton's motions as they pertain to all issues except for the claim of ineffective assistance of counsel related to the information she received regarding deportation issues and the need for a translator to address her understanding of those issues. I recommend a summary dismissal of all other grounds, but will appoint counsel to address the issue of immigration consequences and provide for supplementation of the record, if appropriate, including an evidentiary hearing should I determine it is necessary.

**FACTUAL BACKGROUND**

On May 19, 2011, Horton waived indictment and pleaded guilty to a one-count information charging her with using a counterfeit access device. According to the prosecution

version of the case, see ECF No. 5, Horton admitted that she presented a bank with fraudulent photographic identification in the name of Eleanor Goodrich in order to obtain a debit card in the names of Goodrich and Horton's mother without their authorization.[1] Horton then signed Goodrich's name on the back of the card and used it to make purchases totaling $461.82. In exchange for Horton's guilty plea, the Government agreed to dismiss a second superseding indictment against her in Case No. 2:10-cr-126-GZS-2, which charged her with mail fraud and conspiracy for having fraudulently obtained a life insurance benefit of $51,385.64 that was intended for Goodrich.[2] On December 16, 2011, the Court sentenced Horton to three months imprisonment followed by three years of supervised release. Horton was to begin serving her sentence no later than January 11, 2012, and it appears from the docket sheet, see ECF No. 25, that she surrendered by that date and therefore completed her prison term by April 2012. On May 1, 2012, she filed a motion to vacate, set aside, or correct her sentence (Mot., ECF No. 30), and on May 24, 2012, she filed a supplemental motion to vacate, set aside, or correct her sentence (Supp. Mot., ECF No. 33).[3]

## GROUNDS RAISED IN THE MOTIONS

Horton asserts three grounds in her first motion. She begins by alleging that postal inspector John Osborne was related to "plaintiff," by which Horton appears to mean Goodrich, thereby "causing obstruction of justice and conflict of interests." (Mot., p. 3.) Horton then claims that Osborne and Goodrich falsely accused her and that her attorney, Richard Berne,

---

[1] The Government's opposition to Horton's motions explains that Horton's mother was the first wife of John Goodrich and that Eleanor Goodrich was the second wife of John Goodrich. See ECF No. 45, pp. 11-12 (citing presentence investigation report).

[2] John Goodrich died on June 11, 2009. Govt. Opp., p. 11. The Government also charged Horton's mother in connection with the insurance fraud in Case No. 2:10-cr-126-GZS-1.

[3] A motion to vacate, set aside, or correct a sentence may be filed by a "prisoner in custody" pursuant to 28 U.S.C. § 2255(a). Although Horton apparently served her term of imprisonment, she was on supervised release when she filed her motions. Supervised release qualifies as custody for the purposes of § 2255. See United States v. Acosta, 2010 U.S. Dist. Lexis 110186, 2010 WL 4026106 (D.N.H. Oct. 12, 2010). If Horton had no longer been under supervision, she could have challenged her sentence by way of a writ of error coram nobis. Id.

"refused to take [the false accusations] seriously" and "manipulated this plea so [Horton] would be responsible for everything." (Id.)  Horton's next ground is that "[t]he bank placed all of the responsibility on [her] as if they never authorized the transaction . . . ." (Id., p. 4.)  The last ground is that "local Maine State laws were disrespected and never brought out in [Horton's defense]" and that Berne said those laws were "useless" in her case. (Id., p. 5.)  Horton also states in her motion: "I took this plea as I was convinced that it is the only way to remain in the country with my family." (Id., p. 1.)

      Horton raises four grounds in her supplemental motion.  First, she states that she "did NOT know that this plea would cause [her] deportation" and she "believe[d] that it would be otherwise" because Berne "convinced [her] that he is fully aware with [the] immigration side of this case and this plea will not cause [her] deportation." (Supp. Mot., p. 7.)  Her second ground is that she did not have a translator, Berne's counseling was "ineffective," and she did not "fully" understand "the process." (Id., p. 8.)  In ground three, Horton repeats her allegations against Osborne, adding that he "was caught on lies during the hearings" yet "remained in this case." (Id., p. 10.)  In ground four, Horton asserts that Goodrich falsely accused her, asked the Court "to remove [her] from the country," discriminated against her on the basis of race, and engaged in "mudslinging" against her and her mother. (Id., p. 11.)

### INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

      Although Horton's grounds are wide-ranging, I think that the chief issue is whether Berne properly advised her of the immigration consequences of her guilty plea.  Horton's 28 U.S.C. § 2255 claim is dependent on proving ineffective assistance of counsel under the Strickland v. Washington, 466 U.S. 668 (1984), Sixth Amendment standard and Hill v. Lockhart, 474 U.S. 52 (1985), a case addressing ineffective assistance claims related to plea decisions.  "In order to

prevail," Horton must show "both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688, 694). "In other words," Horton "must demonstrate both seriously-deficient performance on the part of [her] counsel and prejudice resulting therefrom." Id.

In Padilla v. Kentucky, 130 S. Ct. 1473 (2010), the Supreme Court addressed the deficiency prong of Strickland in the context of a noncitizen criminal defendant, holding that "counsel must inform [his] client whether [her] plea carries a risk of deportation." Padilla, 130 S. Ct. at 1486. "When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." Id. at 1483 (footnote omitted). As to the prejudice prong of Strickland, Padilla noted that "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Id. at 1485. In applying Strickland and Padilla to a case such as this one, in which "a petition for federal habeas relief is presented to the judge who presided at the petitioner's [plea and sentencing], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

4

#### DISCUSSION

*Horton's Miscellaneous Grounds for Relief*

Horton's miscellaneous grounds focus on the conduct of Goodrich, Osborne, and the bank.  The factual allegations supporting these grounds are sparse or nonexistent.  Furthermore, none of these grounds affects the evidence of Horton's own conduct in obtaining and then using a fraudulent debit card.  Horton's claim regarding Maine state laws is vague and has no effect on her conviction of a federal crime.  The Government has provided a lengthy and complete response to these miscellaneous grounds and I do not need to repeat here all the arguments made in the response.  Suffice it to say that these grounds do not warrant further development based upon the information Horton has provided.  "To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings."  David v. United States, 134 F.3d 470, 478 (1st Cir. 1998).  Horton is not entitled to relief on any of the miscellaneous grounds raised in her motions and I recommend that the Court summarily dismiss them at this juncture.

*The Padilla Claim Involving Immigration Consequences*

This claim is currently undeveloped on the existing record.  There is a cryptic e-mail from an attorney (not court appointed counsel in the criminal case) indicating that she erred in advising Horton, presumably about the immigration consequences of her plea.  (ECF No. 45-1.) Whether Horton can meet the Padilla standard regarding ineffective assistance of counsel remains to be seen.  However, Horton's best opportunity to make her case would be with the assistance of counsel who could supplement the record either with affidavits from prior counsel or with a request for an evidentiary hearing.  Additionally, counsel may be able to advance legal arguments that have not been fully articulated by Horton.  For these reasons I am appointing Jon

Haddow, Esq. to represent Horton. Haddow will have 30 days from today's date to supplement the record with any additional materials and/or legal argument he deems appropriate on the ineffective assistance and translator claims regarding immigration consequences. Horton, acting pro se, may file any objection to the recommendation that the miscellaneous grounds be summarily dismissed within the time period allowed for such objections.

## CONCLUSION

For the reasons stated above, Horton's miscellaneous grounds in her motions to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 should be summarily dismissed. The remaining grounds relating to immigration consequences will remain pending in order to give court-appointed counsel an opportunity to supplement the record.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

Dated: September 6, 2012                    /s/ Margaret J. Kravchuk
                                            U.S. Magistrate Judge