UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JULIET HORTON, )<br>)<br>    Movant )<br>) | |
| v. )<br>)<br>) | 2:11-cr-00070-GZS<br>2:12-cv-00147-GZS |
| UNITED STATES OF AMERICA, )<br>)<br>    Respondent ) | |

**SUPPLEMENTAL RECOMMENDED DECISION**

On September 6, 2012, I issued a recommended decision (ECF No. 49) addressing the majority of the various grounds raised in Juliet Horton's original section 2255 motion (ECF No. 30) and grounds three and four of Horton's Supplemental Motion to Vacate (ECF No. 33). That recommendation has been held in abeyance since the fall of 2012 because I reserved ruling on two grounds within the supplemental motion to vacate, claims of ineffective assistance of counsel relating to deportation issues and relating to the need for a translator to address her understanding of the various issues in the context of the Rule 11 proceedings. I appointed counsel to represent Horton in connection with those issues, after recommending summary dismissal of the other claims she raised. Her remaining claims were plainly lacking in merit and the government was entitled to summary dismissal. Appointed counsel has filed a supplemental memorandum addressing the ineffective assistance of counsel issue in the context of the immigration consequences issues, including an affidavit from the attorney who represented Horton on the underlying criminal charges. I now conclude that Horton was not deprived of effective assistance of counsel and I recommend dismissal of the two remaining grounds, along

with my prior recommendation that all other grounds in both the original motion and the supplemental motion are subject to summary dismissal.

## THE FACTUAL BACKGROUND

The details of the original criminal case are set forth in my initial recommended decision and I will not repeat them here. However, I will explain the subsequent events and the reason for the lengthy delay between the first recommendation and this supplemental recommendation. After Attorney John Haddow was appointed to represent Horton, counsel learned through inquiry by the government that Juliet Horton was deported on July 31, 2012. (See ECF No. 52.) A great deal of time and effort on counsel's part has been spent tracking down Horton in her native Uzbekistan and communicating with her about the particulars of her case. Mr. Haddow also had to investigate exactly what had happened in the context of the immigration hearings in order to properly assess defense counsel's advice in the context of the underlying criminal complaint. There is no doubt in my mind that Haddow, an experienced member of the CJA panel in Bangor and an immigration attorney as well, has competently explored the details of the prior representation by defense counsel during the criminal proceedings. Haddow early concluded that Horton's deportation did not render the case moot because if the conviction could be vacated, Horton would be in a position where she might be able to obtain permission to re-enter the country. Following a telephone conference with government counsel and Haddow, after he and I learned of Horton's removal, I allowed him to remain on the case. Thus, he continued with his investigation.

Mr. Haddow's explication of the factual details of counsel's prior representation, based on the affidavit of criminal defense counsel Richard Berne and the transcript of the proceeding before the immigration judge, is set forth below:

As is noted in the Recommended Decision, the Defendant was charged in an indictment with mail fraud involving the theft of the $50,000 proceeds of a life insurance policy. Based upon his review of discovery and the evidence likely to be presented against her at trial, Mr. Berne believed that the Defendant was likely to be convicted and so informed the Defendant. Mr. Berne was aware that the Defendant was a Lawful Permanent Resident of the United States, and that a conviction of this charge would be considered an aggravated felony, resulting in her removal from the United States. For this reason, Mr. Berne consulted with immigration counsel before making any recommendation to the Defendant regarding a potential disposition of the case by a guilty plea.

Mr. Berne discussed with immigration counsel what impact a plea to credit card fraud under 18 U.S.C. § 1029 would have for immigration purposes. He was informed that as long as the loss amount was less than $10,000, the charge would not be considered an aggravated felony under immigration law.[footnote omitted] Immigration counsel cautioned Mr. Berne that it was imperative that the prosecution version show just the loss amount for the credit card fraud, which was $461.82, since with a loss in that amount the § 1029 offense would be considered a crime of moral turpitude under immigration law, permitting the Defendant to argue for a waiver of removal from the United States after conviction.

When he met with the Defendant to discuss her plea options, Mr. Berne advised her of immigration counsel's opinion concerning the immigration consequences of a guilty plea to the § 1029 charge, and he recommended that he explore the possibility of a plea to a § 1029 charge, rather than mail fraud, with the prosecution. More specifically, Mr. Berne informed her that such a conviction could be construed as a crime of moral turpitude, and that the Defendant could apply for a waiver of removal on the basis that she had been in the United States for a lengthy period of time and had a young child who was a United States citizen. Mr. Berne advised the Defendant that a conviction of the mail fraud charge in the indictment would, on the other hand, result in automatic removal.

Over the course of several months, Mr. Berne met with the Assistant United States Attorney responsible for the prosecution, her supervisors, and ultimately with the United States Attorney himself in an effort to obtain a plea agreement to a charge that would not be an aggravated felony under immigration law. These discussions resulted in the government offering the Defendant a plea to the charge of use of a counterfeit access device, in violation of 18 U.S.C. § 1029 (a)(1), (c)(1) (a)(i) (e)(1) and (e)(2), rather than mail fraud, and with an agreement that the prosecution version of the offense would recite only the $461.82 loss resulting from the credit card fraud. However, the government required that the presentence report (PSR) recite the facts regarding the mail fraud, including the loss amount of more than $50,000. The government also insisted that the Defendant agree to make restitution in that amount.

3

> Immigration counsel advised Mr. Berne that the restitution order and the inclusion of the description of the $50,000 mail fraud charge in presentence report could raise an issue as to the classification of the § 1029 conviction in an immigration proceeding, but she opined that there was a strong argument that it would be insufficient to establish that the conviction was an aggravated felony rather than a crime of moral turpitude. When Mr. Berne met with Defendant thereafter, he reiterated immigration counsel's advice about the potential immigration consequences of this plea agreement, including her warning about the inclusion of the loss amount related to the mail fraud in the PSR and the restitution amount in judgment. Mr. Berne therefore advised the Defendant that there was a risk of removal even under the plea agreement the government had offered.
>
> The Defendant decided to go forward with a plea of guilty to a single § 1029 charge pursuant to the plea agreement as described above. A prosecution version consistent with this charge was filed with the court along with a joint memorandum in support of the prosecution version that reiterated $461.82 loss amount.
>
> After the Defendant completed her sentence, she was detained by the Department of Homeland Security and appeared in removal proceedings in immigration court. The Department of Homeland Security asserted that the Defendant had committed an aggravated felony, requiring her removal from the United States. The Defendant was not represented by counsel in the removal proceedings. At her hearing in immigration court, the attorney representing the Department of Homeland Security apparently introduced the original indictment (which the government had not pursued), the PSR [footnote omitted] and the order of restitution to establish the loss amount at more than $10,000 for the underlying offense. See Exhibit A, p. 10. The Defendant offered no evidence as to the amount of loss. The immigration judge accepted the evidence offered by the Department of Homeland Security, and found that the loss amount exceeded $10,000, making the offense an aggravated felony. See Exhibit A, Oral Decision, pp. 2-3. The immigration judge ordered the Defendant's removal from the United States.

(Supplemental Memorandum at 1-4, ECF No. 71.)

## DISCUSSION

The Supreme Court established in <u>Padilla v. Kentucky</u>, 559 U.S. 356, 130 S. Ct. 1473 (2010), that the performance prong of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), is clearly implicated in the context of a noncitizen criminal defendant, holding that "counsel must inform [his] client whether [her] plea carries a risk of deportation." <u>Padilla</u>, 130 S. Ct. at 1486. "When

the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." Id. at 1483 (footnote omitted).

In the present case the expanded record now conclusively establishes that Horton's criminal defense counsel did not render ineffective assistance of counsel regarding the possible consequences of Horton's plea of guilty to the misuse of credit card charge. The expanded record, which includes not only the transcript of the Rule 11 proceedings, but also the transcript of the immigration proceedings, also conclusively establishes that Horton's complaint regarding the failure to provide a Russian translator is unavailing. As to that secondary issue, both transcripts reveal Horton's fluency in the English language. The pleadings she submitted pro se in this case further support the conclusion that she did indeed understand the possible consequences of the guilty plea. Additionally, the supplemental memorandum does not develop any further basis for a conclusion that Horton needed a translator in order to understand the risks attendant to her plea and to that extent this secondary issue has been waived.

Turning to the primary ineffective assistance claim, counsel and the court both advised Horton of the possible consequences of a plea and counsel attempted to secure for her a plea to a charge that carried the least risk of deportation, or at least the possibility of being able to fashion an argument that could have forestalled mandatory deportation. This case is not one where the defense counsel simply advised that there *may* be immigration consequences. Nor is it a case where the defense counsel advised the defendant *incorrectly* as between two possible charges to which she might have pled guilty. See, e.g., United States v. Akinsade, 686 F.3d 248 (4th Cir. 2012) (involving counsel's incorrect advice that petitioner could not be deported for pleading

guilty to a single offense of embezzlement). Instead, defense counsel, and now post-conviction counsel, painstakingly explored the available alternatives and gave Horton the best advice they could under the circumstances.

It is worth noting that there is circuit precedent to the effect that a restitution order, in and of itself, is not necessarily clear and convincing evidence that the amount of loss exceeds $10,000.00, creating an aggravated felony with the attendant mandatory deportation. See Singh v. Attorney General of the United States, 677 F.3d 503, 512-516 (3d Cir. 2012) (involving a minority-business-enterprise, government contract kickback scheme that resulted in an order of restitution in excess of $10,000, but did not cause an actual "loss" to the government for purposes of the aggravated felony definition in 8 U.S.C. § 1101(43)(M)(i)). This is definitely an area of immigration law that is not clear and straightforward and in this case the criminal defense attorney did the best one reasonably could do to position Horton so that she would have at least an argument to make before the immigration judge. That Horton was unable to even try to successfully make that argument before the immigration judge, most probably because she was uncounseled and unsure of how to proceed, does not mean that her criminal defense attorney provided ineffective assistance of counsel.

In the final analysis, although the circumstances of this case are sad, especially given the apparent death of Horton's husband and the unknown status of her seven year old child who is an American citizen, there is no viable claim of ineffective assistance of counsel. While Horton may believe that family members unfairly made her a scapegoat in this affair and that the investigating officer was unfair in his approach to the case, there is no suggestion that she is "actually innocent" of the crime of conviction or even any evidence that she had a viable defense

to the credit card charge. Accordingly, I recommend that the motion and supplemental motion both be denied.

## CONCLUSION

For the reasons stated above, I recommend that the Court deny Juliet Horton relief under 28 U.S.C. § 2255, with prejudice, and dismiss the petition. I further recommend that a certificate of appealability should not issue in the event Juliet Horton files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

April 19, 2013                             /s/ Margaret J. Kravchuk
                                           U.S. Magistrate Judge